IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS A. MONTALVO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-22 Erie |
| ) | |
| v. ) | |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, J.

Plaintiff, Luis A. Montalvo, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Montalvo filed an application for SSI on March 21, 2003, alleging that he was disabled since November 1, 2002 due to a herniated disc (Administrative Record, hereinafter "AR", at 55-57, 75). His application was denied initially, and Montalvo requested a hearing before an administrative law judge ("ALJ") (AR 40, 46). A hearing was held on July 28, 2004, and following this hearing, the ALJ found that Montalvo was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 14-20). Montalvo's request for review by the Appeals Council was denied (AR 4-6), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny the Plaintiff's motion, and grant the Defendant's motion.

**I. BACKGROUND**

Montalvo was born on February 12, 1966, and was 38 years old at the time of the ALJ's decision (AR 14, 55). He has a seventh grade education and past relevant work experience as a laborer (AR 81, 84). He is unable to read or write English, and speaks very little English (AR 14).

Montalvo underwent physical therapy in September and October 2002 for cervical/thoracic strain as a result of a work injury (AR 113-120). When evaluated on September 30, 2002, Montalvo had seventy-five percent cervical flexion, normal motor strength, and hyper-sensation of the left lateral forearm (AR 119). On his last visit on October 9, 2002, his cervical range of motion was within normal limits for flexion bilateral rotation and side bending, and his cervical extension had improved to seventy-five percent within normal limits (AR 115). His strength was 5/5 bilaterally in his upper extremities, and testing demonstrated a negative cervical compression test and a negative posterior quadrant sign bilaterally (AR 113). Montalvo was discharged from physical therapy and returned to his regular work (AR 113).

On October 22, 2002, Montalvo presented to the emergency room with a mild headache (AR 121). He reported a history of back surgery, but denied any neck or back pain (AR 121-122). On physical examination, his motor strength was 5/5 symmetrically in the upper and lower extremities, and his reflexes were grossly intact (AR 122). A CT scan of his head was normal (AR 122). Montalvo was treated with Naprosyn and Lortab, and discharged in stable condition with instructions to follow-up with his primary care physician (AR 12-123).

Montalvo returned to the emergency room on October 25, 2002 with a chief complaint of left upper quadrant and epigastric pain radiating to his back, with associated nausea and vomiting (AR 125). On physical examination, mild tenderness was noted in the left upper quadrant on deep palpation (AR 126). He had a normal range of motion in his back, normal motor strength, and normal sensation (AR 126). He was diagnosed with acute exacerbation of abdominal pain, likely secondary to peptic ulcer disease, gastric or duodenal ulcer or gastritis (AR 126). He was prescribed Prevacid and Compazine, and was to remain off work for three days (AR 126).

Montalvo was seen by Matthew Wiza, D.O., on March 6, 2003 with a chief complaint of a cough with a headache and sinus pressure (AR 133). He reported a history of back surgery in 1991, and that a recent CT scan and MRI reports were negative (AR 133). Dr. Wiza noted that Montalvo had a "history of chronic back pain and failed back syndrome" (AR 133). On physical examination, Dr. Wiza observed an incision consistent with a discectomy of the back, and found that Montalvo had a decreased range of motion of the lumbosacral spine (AR 133). However, he had normal muscle strength and sensation, with no radicular symptoms (AR 133). Dr. Wiza

2

diagnosed Montalvo with lumbago with radiculopathy/failed back syndrom, and acute rhinosinusitis (AR 133). He prescribed antibiotics and opined that Montalvo was disabled for three months (AR 133).

On April 1, 2003, Montalvo returned to Dr. Wiza complaining of increased lower back pain (AR 132). Dr. Wiza found that he had muscle spasms and decreased range of motion in his lumbar spine (AR 132). Straight-leg raising test was normal in the seated position, and he had normal sensation and reflexes (AR 132). Dr. Wiza assessed Montalvo with chronic back pain, and prescribed Tylenol #3 with no refills, instructed him to use Ibuprofen, moist heat, and low back exercises (AR 132).

Montalvo returned to Dr. Wiza on May 1, 2003 for follow-up (AR 131). Dr. Wiza noted that Montalvo had not followed up with physical therapy (AR 131). He had a positive straight-leg raising test, and his remaining musculoskeletal examination was essentially unchanged (AR 131). Dr. Wiza diagnosed acute lumbosacral strain and sprain, and chronic lumbago (AR 131). He indicated that Montalvo was disabled for two more months, and prescribed Flexiril and Tylenol #3 (AR 131).

Montalvo underwent a consultative examination performed by Valerie Gilreath, D.O., on June 25, 2003 (AR 135-145). Montalvo reported a medical history of a lumbar laminectomy in 1990 and a repeat lumbar laminectomy in 1991 (AR 136). On physical examination, Dr. Gilreath found tenderness and muscle spasm at the lumbar spine area (AR 138). Sensory examination revealed diminished vibratory perception in the lower limbs as compared to the upper limbs, and there was decreased pinprick along the SI dermatome on the right (AR 139). Motor examination failed to reveal any overt weakness, and overall strength was 5/5 (AR 139). Montalvo used a cane to walk, and, according to Dr. Gilreath, walked "like a stiff man," but was able to walk on toes and heels, and tandem walk holding on to the table (AR 137, 139). Dr. Gilreath reported that Montalvo did not exhibit any pain behavior during the examination, and neither embellished his symptoms nor made any attempt to underestimate his history or overstate his pain (AR 138).

Dr. Gilreath indicated that Montalvo was "definitely without any neurological deficit" (AR 139). He had reduced muscle mass on the right, but did not show actual atrophy or fasciculation, indicating signs of nerve deadness (AR 139). Dr. Gilreath considered his condition

stabilized, and noted there was no objective evidence of muscle weakness (AR 140). He opined that Montalvo's pain was real in nature, with an unknown etiology, but was probably related to nerve root swelling and recrudescence of disc material (AR 140). Dr. Gilreath concluded that Montalvo was able to take care of his activities of daily living, and was of the opinion that he could return to light or sedentary work, but not in the field of manual labor (AR 140). Dr. Gilreath's clinical impressions were chronic cough, etiology not determined, status post-lumbar laminectomy, and chronic lumbar pain with right lower limb radicular pain (AR 139). He opined that Montalvo could lift twenty pounds frequently, stand/walk one hour or less per day, sit less than six hours per day, never balance or climb, and occasionally perform other postural activities (AR 142-143).

On July 21, 2003, Frank Bryan, M.D., a state agency reviewing physician, completed a residual functional capacity ("RFC") assessment relative to Montalvo's physical capabilities (AR 146-155). Dr. Bryan concluded that Montalvo could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push/pull without limitation; and had no postural limitations (AR 147-148). Dr. Bryan found that the restrictions imposed by Dr. Gilreath were based on Montalvo's representation of what his capabilities were, and were not supported by Dr. Gilreath's exam or any documentation in the medical record (AR 155).

Montalvo was hospitalized on August 6, 2003 following complaints of blurred vision and an increase in urination (AR 161). Dr. Wiza noted a history of mild cirrhosis, with elevated liver functions tests, and that a liver spleen scan showed some mild cirrhotic change (AR 161). Due to his elevated liver enzymes and recent onset of hyperglycemia, Dr. Wiza recommended hospitalization (AR 161). Upon admission, his musculoskeletal examination showed decreased range of motion with leg extension in his lumbar spine, with negative seated straight-leg raise test (AR 163). His deep tendon reflexes were full and equal, sensation was intact, muscle strength was full and equal in all extremities (AR 163). Montalvo was started on insulin therapy and responded well (AR 159). A gastrointestinal consult was obtained due to a history of chronic abdominal pain (AR 159). James Pilla, M.D., indicated that Montalvo most likely had non-alcoholic fatty liver disease, and he recommended diet, exercise and aggressive treatment (AR

170). On discharge, Montalvo was diagnosed with diabetes and chronic non-alcoholic liver disease (AR 158). He was discharged with instructions to begin using insulin, and resume his pre-hospitalization medications (AR 160, 163).

On August 12, 2003, Dr. Wiza completed an Employability Assessment Form and opined that Montalvo was permanently disabled due to chronic back pain, diabetes, and cirrhosis (AR 129). Dr. Wiza checked blocks on the form indicating that his assessment was based on a physical examination, review of medical history, clinical history, and appropriate tests and diagnostic procedures (AR 129).

Montalvo returned to Dr. Wiza on September 16, 2003 complaining of a cough, congestion, sore throat, headache and dizziness (AR 190). Dr. Wiza noted a history of diabetes and chronic liver disease (AR 190). He prescribed an antibiotic for his infection, and switched his pain medication to Lortab due to his elevated liver enzymes (AR 190). Dr. Wiza diagnosed sinobronchial syndrome, diabetes requiring insulin, and chronic back pain (AR 190).

On November 21, 2003, Montalvo presented to the emergency room complaining of an onset of sharp lower abdominal pain with associated vomiting while working on a car (AR 181). He also complained of chills and dizziness (AR 181). On physical examination, tenderness was noted in the suprapubic region (AR 182). Some tenderness was noted in his back, but he exhibited a full range of motion, and had a normal motor and sensory examination (AR 182). Liver function scores were just above high normal on testing (AR 182). A CT scan of his abdomen showed no abnormalities (AR 182). Montalvo was discharged with a diagnosis of abdominal pain of unknown etiology (AR 183).

Montalvo returned to Dr. Wiza on December 15, 2003 with multiple complaints and for follow-up on his diabetes (AR 188). He claimed he was in constant pain all the time, and specifically complained of pain in the back of his neck, numbness from his neck down his body, pain in his right foot, hip pain, and had a cough and congestion (AR 188). Montalvo also reported he "was paralyzed in Ohio," but Dr. Wiza did not find "any etiology of any muscle problem at the present time" (AR 188). On physical examination, Montalvo had tenderness to palpation over his right trapezius insertion, with decreased range of motion of the cervical spine, with normal reflexes, sensation, and motor strength (AR 188). Dr. Wiza diagnosed an upper

respiratory infection, acute cervical strain and sprain, and diabetes (AR 188).  He prescribed Flexeril and Robitussin DM, and recommended moist heat and an x-ray of the cervical spine (AR 188).

Montalvo was hospitalized on March 31, 2004 following complaints of weakness in his legs (AR 191).  Neurosurgical consultation showed no cause for his problem, and neurology was of the impression that his pain probably caused pseudoparalysis (AR 191).  An x-ray of his lumbar spine showed narrowing of the spinal canal at L-5 (AR 192).  An MRI of his lumbar spine dated March 30th showed right posterolateral and right paramedian herniation at L-5 and S-1, however, another report of the same test showed no acute findings (AR 192).  MRI's of his thoracic spine, cervical spine and brain showed no abnormalities (AR 192).  An EMG showed diabetic neuropathy (AR 191).  Initially Montalvo was discharged home, but he required help because he lived in a basement and had difficulty climbing stairs (AR 191).  He was transferred to Health South for continued physical therapy (AR 191).

Montalvo received inpatient rehabilitation at Health South from April 5, 2004 through April 19, 2004 (AR 193-202).  On discharge, he was able to walk independently and could use stairs as long as he used two handrails (AR 197).  He did not require any assistance in performing personal care, but needed a rolling walker to perform laundry and housekeeping chores (AR 198).

Montalvo and Noel Plummer, a vocational expert, testified at the hearing held by the ALJ on July 28, 2004 (AR 203-220).  Montalvo testified that he suffered from pain in his lower back radiating to his left leg, and occasionally had neck pain radiating down his spine (AR 209).  He also suffered from constant headaches (AR 212).  To alleviate the pain, he took pain medication, used a hot water bottle, and would frequently lie down (AR 209-210).  He claimed he had more bad days than good days, and had trouble sleeping at night (AR 212, 214).  Montalvo testified that he could lift five pounds, stand for fifteen to twenty minutes, sit for thirty minutes, and walk once around the block without sitting down (AR 211).  He used a cane or walker to ambulate (AR 214).

The ALJ asked the vocational expert if work existed for an individual of Montalvo's age, education, and work history, who was able to perform work that did not require exertion above

6

the sedentary level, that allowed the individual to alternate sitting and standing, and did not require reading or writing English (AR 217-218). The vocational expert testified that such an individual could perform work as a packager and small machine operator (AR 218). The vocational expert testified that these jobs could still be performed by a person who needed an assistive device to walk (AR 218). He further testified that an individual who was unable to leave the house approximately once a week due to pain would not be able to maintain employment (AR 218-219).

Following the hearing, the ALJ issued a written decision which found that Montalvo was not eligible for SSI benefits within the meaning of the Social Security Act (AR 20). Montalvo's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 4-6). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical

7

>impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Montalvo's case at the fifth step. At step two, the ALJ determined that his degenerative disc disease and recent onset of diabetes were severe impairments, but determined at step three that he did not meet a listing (AR 15). At step four, the ALJ determined that Montalvo had the residual functional capacity to perform work that did not require exertion above the sedentary level which allowed for a sit/stand option, and did not require reading or writing English (AR 16). At the final step, the ALJ determined that Montalvo could perform the jobs cited by the vocational expert at the administrative hearing (AR 18). The ALJ additionally determined that Montalvo's allegations regarding his limitations were not totally credible (AR 19). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Montalvo first claims that the ALJ failed to discuss or issue findings regarding his liver condition. At step two of the five-step process, an ALJ is to determine "whether the claimant has a medically severe impairment or combination of impairments." *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Therefore, the mere existence of a diagnosis does not demonstrate a disability. *Plummer v. Apfel,* 186 F.3d 422, 434 (3rd Cir. 1999). The claimant must demonstrate that he suffers from functional limitations as a result of that impairment. *Adorno v. Shalala,* 40 F.3d 43, 46 (3rd Cir. 1994).

Our review of the ALJ's decision confirms the fact that, although the ALJ discussed Montalvo's medical records and testimony, he failed to discuss or make any findings relative to his liver condition. We are of the opinion, however, that a remand is not required under the facts of this case. We first note that Montalvo did not claim cirrhosis as a disabling condition in his disability application, and offered no testimony of this condition at the administrative hearing. More importantly, the record is devoid of any evidence that Montalvo suffered from any functional limitations as a result of this condition. Montalvo's medical records reflect that his liver disease was first diagnosed on August 6, 2003, when he was hospitalized with an onset of diabetes (AR 161). At that time, he had elevated liver function tests, and a liver spleen scan showed some mild cirrhotic change (AR 161). The only other references in the medical records to Montalvo's liver condition is Dr. Wiza's opinion on August 12, 2003, wherein he opined that Montalvo was permanently disabled due to chronic back pain, diabetes and cirrhosis, and a secondary diagnosis of chronic liver disease and cirrhosis in March 2004 during his hospitalization for back pain (AR 129, 191).[1]

Moreover, we observe that Montalvo does not argue in his Brief that his liver condition affects his ability to work; rather, he simply argues that because the ALJ failed to make findings, the matter should be remanded. *See Plaintiff's Brief* p. 8. Absent evidence that Montalvo's liver condition significantly affects his ability to work however, we fail to see how a remand would affect the outcome of his case. *See e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3rd Cir. 2005) (remand not required where ALJ failed to explicitly consider claimant's obesity because it would not affect outcome of the case); *Winters v. Barnhart*, 80 Fed.Appx. 249, 252 (3rd Cir. 2004) (affirming decision of the district court which concluded that the ALJ's failure to discuss claimant's carotid artery disease had no effect on the sequential analysis); *Adams v. Barnhart*, 2005 WL 1313456 at *3 (E.D.Pa. 2005) (declining to remand due to ALJ's failure to address

---

[1] Montalvo cites his visits to the emergency room in November 2002 and November 2003 as further evidence of a severe liver impairment. *See Plaintiff's Brief* p. 8. However, neither of these records lend support to his argument. In November of 2002, he was diagnosed with acute exacerbation of abdominal pain, likely secondary to peptic ulcer disease, gastric or duodenal ulcer or gastritis, and was only to remain off work for three days (AR 126). His November 2003 hospitalization for abdominal pain resulted in a diagnosis of abdominal pain of unknown etiology (AR 183).

9

claimant's weight since it would not affect outcome of the case). We therefore find no error in this regard.

Montalvo further claims that the ALJ failed to accord proper weight to the opinion of Dr. Wiza, his treating physician. It is well settled in this Circuit that the opinion of a treating physician is entitled to great weight and can only be rejected on the basis of contrary medical evidence. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988). An ALJ must articulate in writing his or her reasons for rejecting such evidence. *Cotter v. Harris*, 642 F.2d 700, 705 (3rd Cir. 1981). In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*. Further, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993).

Dr. Wiza opined on a form for the Department of Public Welfare that Montalvo was disabled due to chronic back pain, diabetes and cirrhosis (AR 129). The ALJ found that his opinion was not consistent with his own treatment notes and examination findings (AR 16). The ALJ further found that Dr. Wiza failed to cite clinical evidence in support of his conclusions (AR 16). He concluded that Dr. Wiza's records failed to show a condition so severe that Montalvo was precluded from performing sedentary work (AR 16). Consequently, the ALJ declined to accord Dr. Wiza's opinion controlling weight.

Upon review of the ALJ's decision and consideration of all the record evidence here, we do not agree that the ALJ committed reversible error in this regard. A treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2). Here, we conclude that the ALJ properly declined to give Dr. Wiza's opinion controlling weight under these standards.

As noted by the ALJ, Dr. Wiza did not provide any narrative explanation or specific findings to support his assessment. *See Mason*, 994 F.2d at 1065 ("Form reports in which a physician's obligation is only to check a box or fill in the blank are weak evidence at best."). As

further noted by the ALJ, Dr. Wiza's opinion was unsupported by his own clinical findings as set forth in his progress notes. In March 2003, Montalvo had a decreased range of motion in his lumbar spine, but had normal muscle strength and sensation, with no radicular symptoms (AR 133). In April 2003, while Dr. Wiza noted muscle spasm and decreased range of motion, a straight-leg raise test was normal in the seated position, and he had normal sensation and reflexes (AR 132). Although Montalvo had a positive straight-leg raise test in May 2003, his remaining examination was unchanged (AR 131). When hospitalized in August 2003, Montalvo had a negative straight-leg raise test in the seated position, and his muscle strength was full and equal in all extremities (AR 163). Upon hospitalization in November 2003, he exhibited some tenderness, but he exhibited a full range of motion and had a normal motor and sensory exam (AR 182). Dr. Wiza found decreased range of motion of the cervical spine in December 2003, but Montalvo had normal reflexes, sensation and motor strength (AR 188). In March 2004, a neurological consultation showed no cause for his problem of weakness in his legs, and tests conducted were essentially unremarkable (AR 191-192). The ALJ's determination not to give Dr. Wiza's opinion controlling weight was not erroneous. We therefore find no error in this regard.[2]

Montalvo next challenges the ALJ's evaluation of Dr. Gilreath's opinion, a consultative examiner who examined Montalvo pursuant to the request of the Commissioner. Dr. Gilreath opined that Montalvo could lift twenty pounds frequently, stand/walk one hour or less per day, sit less than six hours per day, never balance or climb, and occasionally perform other postural activities (AR 142-143). Montalvo claims in essence that Dr. Gilreath's opinion negates his ability to work and that the ALJ's reliance on the non-examining state agency physician's

---

[2]We reject Montalvo's contention that the ALJ should have sought clarification of Dr. Wiza's opinion. The ALJ apparently felt that the record was sufficiently developed for purposes of ruling on his claim. Section 416.912(e)(1) provides that the Administration will take action to re-contact medical sources and obtain additional medical information where the existing evidence is insufficient to determine whether a claimant is disabled. 20 C.F.R. § 416.912(e)(1). We believe the ALJ could permissibly render a decision based upon the evidence in the present record without further development and, therefore, find no error in the ALJ's failure to re-contact Dr. Wiza for further clarification under the circumstances here.

opinion was in error.

We note that the treating physician rule does not apply to a consulting physician's opinion. *Mason*, 994 F.2d at 1067 (doctrine had no application to physician who examined claimant once). Nonetheless, the Commissioner's regulations do acknowledge that, as a general principal, opinions from examining sources are given more weight than opinions from non-examining sources. *See* 20 C.F.R. 416.927(d)(1). The regulations do not require however, that in every case, an examining physician's medical opinion must be favored over that of a non-examining physician. Instead, the Commissioner must consider a number of competing factors, such as the extent to which there is a treating relationship, the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's opinion is consistent with the entirety of the evidence. *See generally* 20 C.F.R. § 416.927(d)(1)-(6).

Here, the ALJ considered Dr. Gilreath's reported findings based upon his physical examination of Montalvo, and found that Dr. Gilreath's conclusion relative to Montalvo's residual functional capacity was not supported by the record (AR 17). The ALJ observed that Dr. Gilreath's examination findings were essentially unremarkable, other than some differentiation in the measurement of his legs and rigid lumbar area (AR 16). The ALJ noted that Dr. Gilreath found Montalvo's strength was normal, and there was no gross evidence of atrophy of fasciculation in the right leg, or any evidence of muscle weakness (AR 16). The ALJ placed significant weight on Dr. Bryan's opinion, the non-examining state agency physician, who concluded that Montalvo was capable of medium exertion, since it was supported by a detailed rationale (AR 17). However, the ALJ reduced Montalvo's residual functional capacity from the medium level to the sedentary level due to Montalvo's complaints of pain and his recent diabetes (AR 17).

Dr. Gilreath's physical examination of Montalvo was essentially unremarkable. We observe that Dr. Gilreath found no neurological deficits, and there was no objective evidence of muscle weakness (AR 140). While Dr. Gilreath's residual functional capacity assessment essentially precluded Montalvo from working an eight hour day, he was also of the opinion that he could return to light or sedentary work, but not in the field of manual labor (AR 140).

It is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence). The Commissioner's regulations do acknowledge that, as a general principle, opinions from examining sources are given more weight than opinions from non-examining sources. *See* 20 C.F.R. § 416.927(d)(1). However, this is merely a general guideline; it does not require that, in every case, an examining physician's medical opinion must, as a matter of law, be favored over that of a non-examining physician. The ALJ concluded that Dr. Gilreath's opinion lacked objective clinical evidence to support the functional restrictions imposed, and considered Dr. Bryan's assessment reasonable in light of the evidence in the record (AR 17). Since the ALJ analyzed the medical evidence consistent with the required standards, we find that his determination is supported by substantial evidence.

In a related argument, Montalvo contends that the ALJ's reliance on Dr. Bryan's assessment was in error because he did not review the evidence after July 24, 2003. This later medical evidence consisted of Montalvo's hospitalization records, Dr. Wiza's treatment records dated September 2003 through December 2003, and his Health South inpatient records. Although these records were not reviewed by Dr. Bryan, they were reviewed by the ALJ, who specifically discussed these records in fashioning Montalvo's residual functional capacity (AR 17). In fact, the ALJ specifically reduced Montalvo's residual functional capacity from medium to the sedentary level due to his pain and recent diabetes as reflected in these later records. (AR 17). Even if the state agency reviewing physician's had had the benefit of these later records, they do not support Montalvo's contentions that his limitations prevented him from performing substantial gainful activity. We therefore find no error in this regard.

Montalvo also challenges the ALJ's credibility determination. According to the regulations, there is a two-step process an ALJ must follow in evaluating a claimant's subjective complaints. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. *See SSR* 96-7p, 1996 WL 374186, at *2. If such an

impairment exists, then the ALJ must determine the extent to which the claimant's allegations are credible by evaluating "the intensity and persistence of the pain or symptom, and the extent to which it affects the [claimant's] ability to work." *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999).

In making this determination, the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. § 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2. In this regard, there must be objective evidence of some condition that could reasonably produce the alleged pain or symptoms but there need not be objective evidence of the actual pain or symptoms. *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective medical evidence." *Mason*, 994 F.2d at 1067 (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

Montalvo argues that the factors enumerated in *SSR* 96-7p were not appropriately considered by the ALJ, and that a proper application would have resulted in his subjective complaints and symptoms being credited rather than discredited. We find no error in the ALJ's credibility assessment. The ALJ acknowledged that in his determination of Montalvo's RFC, he must consider all symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and *SSR* 96-7p (AR 16). The ALJ found that Montalvo's allegations regarding his limitations were not totally credible (AR 17). In making his determination, the ALJ considered the medical evidence of record, as well as Montalvo's testimony as to his functional restrictions (AR 16-17). He noted that Montalvo testified that

chronic pain required him to lie down three to four hours every day, and that he was not capable of working eight hours a day at any exertional level (AR 17). The ALJ then examined the medical evidence of record and determined that while Montalvo's spinal condition could reasonably be expected to cause pain in his back and legs, the objective medical evidence did not show a condition so severe that he would be unable to engage in sedentary work (AR 17). All of these findings are supported by the record.

       Montalvo claims that the ALJ improperly rejected his need to lie down because it was not supported by the opinion of a physician. However, a review of the ALJ's decision shows that he rejected this testimony on the basis of the objective medical evidence; not because such measure was not prescribed by a physician (AR 17). We also reject his argument that the ALJ ignored the fact that he took medication to control his pain. The fact that Montalvo takes pain medication is not inconsistent with the ability to do sedentary work. The ALJ specifically found that Montalvo suffered from pain and did not completely reject his testimony; indeed, he accommodated his complaints in fashioning his residual functional capacity limiting him to sedentary duties which afforded him the opportunity to alternate between sitting and standing (AR 17). We therefore find that there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

### IV. CONCLUSION

       An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUIS A. MONTALVO,             ) | |
| ) | |
| Plaintiff,             ) | |
| ) | Civil Action No. 05-22 Erie |
| ) | |
| v.             ) | |
| ) | |
| JO ANNE B. BARNHART,             ) | |
| Commissioner of Social Security,     ) | |
| ) | |
| Defendant.             ) | |

### **ORDER**

AND NOW, this 29th day of July, 2005, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED.

JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Luis A. Montalvo. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ____